**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LOUIS VUITTON MALLETIER S.A., ) | |
| ) | |
| ) | 06 CV 13463 (AKH) |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| LY USA, INC., MARCO LEATHER GOODS, ) | |
| LTD., COCO USA INC., CHONG LAM, and ) | |
| JOYCE CHAN, ) | |
| ) | |
| Defendants. ) | |

## LOUIS VUITTON'S MEMORANDUM OF LAW
## IN SUPPORT OF ITS APPLICATION FOR STATUTORY DAMAGES
## ATTORNEYS' FEES, INVESTIGATIVE FEES AND COSTS

Steptoe & Johnson LLP

Michael J. Allan
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000

Lenor Marquis Segal
750 Seventh Avenue, Suite 1700
New York, NY 10019
(212) 506-3900

*Attorneys for Plaintiff, Louis Vuitton Malletier S.A.*

September 8, 2008

# TABLE OF CONTENTS

Page

I.  SUMMARY ................................................................................................1

II.  CASE HISTORY .......................................................................................2

III.  MAXIMUM STATUTORY DAMAGES ARE APPROPRIATE .....................................5

    A.  The Legal Standard ..............................................................................5

    B.  All Factors Weigh in Favor of an Award of the Maximum Statutory
        Damages ................................................................................................6

        1.  Defendants Are Large-Scale Counterfeiters Who Acted Knowingly
            and in Bad Faith ....................................................................6

        2.  Defendants Have Not Cooperated in Providing Information
            Relevant to Proof of Profits and Losses .......................................7

        3.  A Maximum Statutory Damages Award Would Deter Defendants'
            From Continuing Their Massive Counterfeiting Enterprise ....................8

        4.  Louis Vuitton's Trademarks are Valuable and Have Been Harmed
            By Defendants' Large-Scale Counterfeiting Enterprise ..........................9

        5.  The Defendants Have Enjoyed Significant Commercial Gain at
            Louis Vuitton's Expense .......................................................10

        6.  Defendants Have Taken Extensive Measures to Conceal the Scope
            and Extent of This Counterfeiting Scheme ....................................11

    C.  This Court Has Awarded Maximum Statutory Damages Before and
        Should Do So Here ................................................................................12

IV.  LOUIS VUITTON IS ENTITLED TO RECOVER ITS ATTORNEYS' FEES,
     INVESTIGATIVE COSTS AND EXPENSES ....................................................13

    A.  Louis Vuitton is Entitled to Reasonable Lodestar Fees. .......................13

        1.  Plaintiffs' Records Demonstrate the Reasonableness of the Fees
            Sought ................................................................................13

         2.  Plaintiffs' Total Hours Are Reasonable ......................................14

         3.  Plaintiffs Are Seeking Reasonable Market Rates ..........................15

    B.  Plaintiffs Expenses are Compensable .................................................16

V.  CONCLUSION ...........................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Albany,*
    522 F.3d 182 (2d Cir. 2008)....................................................................................16

*Bambu Sales, Inc. v. Ozak Trading Inc.*,
    58 F. 3d 849 (2d Cir. 1995)......................................................................................14

*Crescent Publishing Group, Inc. v. Playboy Enterprises, Inc.*,
    246 F.3d 142 (2d Cir. 2001).....................................................................................15

*Gucci Amer. Inc. v. Duty Free Apparel, Ltd.,*
    315 F. Supp. 2d 511 (S.D.N.Y. 2004)...................................................................7, 13

*Hensley v. Eckerhart,*
    461 U.S. 424 (1983)......................................................................................14, 15, 16

*Kepner Tregoe, Inc. v. Vroom*,
    186 F.3d 283 (2d Cir. 1999)........................................................................................9

*Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*,
    378 F. Supp.2d 448 (S.D.N.Y. 2005).........................................................................10

*Louis Vuitton S.A. v. Lee,*
    875 F.2d 584 (7th Cir. 1989) ......................................................................................9

*Missouri v. Jenkins*,
    491 U.S. 274 (1989)...................................................................................................17

*N.A.S. Import Corp. v. Chenson Enter., Inc.*,
    968 F.2d 250 (2d Cir. 1992).......................................................................................10

*New York State Ass'n for Retarded Children, Inc. v. Carey,*
    711 F.2d 1136 (2d Cir. 1983).....................................................................................15

*Nike, Inc. v. Top Brand Co.,* No. 00 CV 8179, 2006 U.S. Dist. LEXIS
    76540, at 9 (S.D.N.Y. Oct. 6, 2006) ..........................................................................12

*Northcross v. Board of Ed. Of Memphis City Schools,*
    611 F.2d 624 (6th Cir. 1979) .....................................................................................18

*Philip Morris USA Inc. v. Felizardo*,
    2005 WL 2076921 (E.D.N.Y.).................................................................................9, 13

*Philip Morris USA v. Felizardo,*
  No. 03 Civ. 5891, 2004 U.S. Dist. LEXIS 11154 (S.D.N.Y. June 18, 2004) ..........................10

*Playboy Enters, Inc. v. Asiafocus Int'l, Inc.,*
  1998 WL 724000 (E.D. Va. Apr. 10, 1998) ...........................................................................13

*Polo Ralph Lauren, L.P. v. 3M Trading Company, Inc.,*
  1999 U.S. Dist. LEXIS 7913 (S.D.N.Y. March 22, 1999) .............................................7, 8, 10

*Rozell v. Ross-Holst,*
  2008 WL 2229842 (S.D.N.Y. 2008).............................................................................15, 17

*Sara Lee Corp. v. Bags of New York, Inc.,*
  36 F. Supp.2d 161 (S.D.N.Y. 1999).....................................................................................7

*Scandia Down Corp. v. Euroquilt, Inc.*
  772 F.2d 1423 (7th Cir. 1985) ...........................................................................................11

*Supreme Oil Co., Inc. v. Abondolo,*
  2008 WL 2925300 (S.D.N.Y. 2008).....................................................................................15

*West Virginia University Hospitals, Inc. v. Casey,*
  499 U.S. 83 (1991)..............................................................................................................18

STATUTES

15 U.S.C. § 1117...................................................................................................................7

On August 28, 2008, this Court entered a Permanent Injunction and Order (Doc. No. 110) against Marco Leather Goods, Ltd. ("Marco"), Coco USA Inc. ("Coco"), LY USA Inc. ("LY"), Joyce Chan and Chong Lam (collectively "Defendants"). The Court granted Louis Vuitton's motion for summary judgment in its entirety and found all Defendants jointly and severally liable for willful and intentional trademark counterfeiting, willful and intentional trademark infringement, and the use of false designations of origin in violations of Sections 32 and 43(a) of the Lanham Act. The Order further stated that the Defendants were liable for damages pursuant to Sections 32 and 43(a) as well as attorneys' fees and costs in an amount yet to be determined.

Louis Vuitton respectfully submits this memorandum in support of its request for a maximum statutory damages award of $8 million ($5 million for willfully counterfeiting five trademarks on handbags and wallets and $3 million for willfully counterfeiting three trademarks on leather boxes), together with $556,034.22 in attorneys' fees, investigative fees and costs that Louis Vuitton incurred in the successful prosecution of this case.

## I.    SUMMARY

Since this case was filed, Louis Vuitton has presented Defendants with clear cut evidence of Defendants' extensive and sophisticated counterfeiting enterprise. Rather than settle or even negotiate in good faith, the Defendants "defended" the case by avoiding discovery and obfuscating and misrepresenting facts. Their improper litigation tactics forced Louis Vuitton to waste valuable resources on futile discovery and unnecessary motions. Now that the Court has found that the Defendants are large-scale counterfeiters who acted in bad faith, the maximum statutory damages should be assessed. Such an award would deter their willful and massive counterfeiting of not only Louis Vuitton, but Coach, Gucci, Givenchy, Burberry, Fendi and other luxury brands that have fallen prey to the Defendants' counterfeiting machine. Such an award

1

would further recognize the harm caused to Louis Vuitton's goodwill as a result of Defendants' widespread counterfeiting activity. On these exceptional facts, full statutory damages and a recovery of fees and costs is appropriate.

## II.    CASE HISTORY

Louis Vuitton filed suit on November 22, 2006. At the January 26, 2007 conference, Louis Vuitton presented Defendants' catalog depicting counterfeit Louis Vuitton merchandise. *See* September 8, 2008 Declaration of Michael J. Allan ("Allan Decl.") at ¶ 3. In light of this evidence, the Court recommended that the parties consider settlement and ordered the parties to return two weeks later, on February 9. *Id*. Despite the Court's admonition and Louis Vuitton's best efforts, Defendants refused to engage in settlement talks. Instead, Defendants falsely represented to the Court and Louis Vuitton that the counterfeit merchandise shown in the catalogs was never sold in the United States. *Id*. Had the Defendants negotiated in good faith at the Court's instruction, this entire litigation could have been avoided.

Louis Vuitton's efforts to take discovery of the Defendants have been an exercise in futility. Louis Vuitton propounded written discovery designed to reveal inventory, sales and supplier data, as well as Defendants' profits, for the merchandise Louis Vuitton identified as counterfeit and/or infringing. *Id*. at ¶ 4. Even after entry of a finely negotiated protective order, Defendants failed to respond meaningfully to any written discovery. Finally, in late August 2007, the Defendants produced a total of 41 pages of paper, none of which addressed the core issue in discovery – the sale of counterfeit Louis Vuitton merchandise. *Id*. Despite minor document supplementations, the Defendants failed to produce *any* information concerning their sales and inventory of counterfeit merchandise. *Id*.

Tellingly, the Defendants failed to produce information that Marco and Coco had produced in other litigations. For example, the Defendants did not produce any of the extensive U.S. Customs documentation, evidencing the seizure of voluminous counterfeit Louis Vuitton merchandise, produced by Marco and Coco in the litigation with Burberry. *Id*. at ¶ 6. Moreover, the Defendants did not produce any of the hundreds of pages of catalogs, invoices, and related documents concerning Mr. Woo that was produced in other cases. Instead, Defendants maintained that all responsive information had been produced. *Id*.

In October 2007, faced with defending six depositions and imminent motions to compel, the Defendants agreed to mediation. *Id*. at ¶ 7. As a prerequisite, however, Louis Vuitton demanded that Defendants produce in advance complete inventory, sales and financial information concerning their counterfeit and infringing activities. *Id*. at ¶ 9. Defendants agreed to produce that documentation in advance. Allan Decl. at ¶ 9. Based on that representation, Louis Vuitton consented to a brief stay of discovery, which the Court granted. *Id*.

Defendants failed to produce the sales and inventory documentation as promised. Allan Decl. at ¶ 8.

Judge Maas held the mediation on November 22, 2007. In advance, Louis Vuitton prepared a detailed mediation statement proving the size and scope of Defendants' counterfeiting scheme and the relatedness of the Defendants. Allan Decl. at ¶ 8. All of Louis Vuitton's evidence was discovered from third parties or its own investigative efforts; nothing used at mediation was produced by Defendants. *Id*. The Defendants did not mediate in good faith. Rather, they issued baseless denials in the face of irrefutable evidence and made a far less than "nuisance value" settlement offer. *Id*. The mediation was a waste of time and resources for both Louis Vuitton and the Court.

Following expiration of the stay, a status conference was held on January 3, 2008 –
weeks before Ms. Chan and Mr. Lam were arrested. Allan Decl. at ¶ 9. There, Louis Vuitton
asked for an order compelling documents including supplier, inventory and sales information for
all of the Defendants' counterfeit and infringing goods. *Id*. Defense counsel again represented
that all documents responsive to Louis Vuitton's requests had been produced. *Id*. The Court
instructed Louis Vuitton to depose the Defendants in order to develop proof that additional
documentation existed. *Id*. The Court further cautioned defense counsel that if documents had
been withheld, sanctions would be issued. The warning had no effect. Defendants'
obstructionist tactics continued. *Id*.

Louis Vuitton was forced into motions practice just to depose party witnesses. Ms. Chan
and Mr. Lam appeared (and asserted their Fifth Amendment privilege) only after Louis Vuitton
filed motions to compel. Allan Decl. at ¶ 10. The corporate defendants simply refused. *Id*.
Defendants then sought to further delay the proceedings by filing a motion to stay (and follow on
motion for reconsideration), both of which were denied. Despite the Defendants' efforts to
obstruct discovery and conceal their illegal enterprise, Louis Vuitton complied in full with its
obligations by supplementing its written discovery and producing several witnesses for
deposition. *Id*.

Prior to filing its motion for summary judgment, Louis Vuitton attempted to settle one
last time. Cognizant of Defendants' concerns about the criminal case against Ms. Chan and Mr.
Lam, Louis Vuitton negotiated the terms of a proposed settlement with these concerns at the
forefront. Indeed, after several settlement meetings, the parties had reached a memorandum of
understanding, which was reduced to writing, on nearly all material terms. *Id*. at ¶ 12. Then,
without warning, the Defendants refused to settle claiming that a settlement here might be used

against them in the criminal case. That concern was alleviated when the criminal prosecutor advised that a settlement here would not be used in the criminal case. *Id*. at ¶ 12. Despite resolution of that one and only impediment to settlement, the Defendants refused to settle. Again, Louis Vuitton had invested significant time and resources to try and resolve this matter before judgment. *Id*. at ¶ 12. Again, its efforts were rebuffed and its time wasted.

At the conclusion of discovery, Louis Vuitton marshaled all of the evidence it had developed on its own and filed a comprehensive motion for summary judgment proving as a matter of law that the Defendants were willful and intentional counterfeiters and infringers.

## III.    MAXIMUM STATUTORY DAMAGES ARE APPROPRIATE

### A.    The Legal Standard

The Trademark Act provides for damages up to $1 million "*per counterfeit mark per type of goods or services sold, offered for sale, or distributed*" where the defendant's actions are willful. 15 U.S.C. § 1117(c)(2) (emphasis added). The Court has wide discretion in awarding statutory damages and such awards are almost universally upheld on appeal so long as they are within the statutory limits.

The Lanham Act provides that damages should be awarded "as the court considers just." 15 U.S.C. § 1117(c). A variety of non-exclusive factors have been used by courts in arriving at appropriate statutory damages for particular cases, including:

> [T]he profits reaped and the expenses saved by the infringer, the revenues lost by the plaintiff, the value of the [trademark], the need to deter potential infringers, the degree of willfulness or the innocence of the defendant, the defendant's cooperativeness in providing information relevant to proof of profits and losses, and the need to deter the defendant from future misconduct.

*Polo Ralph Lauren, L.P. v. 3M Trading Company, Inc.*, 1999 U.S. Dist. LEXIS 7913 at *14-15 (S.D.N.Y. March 22, 1999). Additional factors considered by this Court include efforts to

mislead and conceal infringement, defiance at attempts to deter counterfeiting and the harm to the plaintiff whose marks and products have been counterfeited.  *See e.g., Sara Lee Corp. v. Bags of New York, Inc.,* 36 F. Supp.2d 161, 167-70 (S.D.N.Y. 1999); *Gucci Amer. Inc. v. Duty Free Apparel, Ltd.,* 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004).  While no one factor is dispositive, this Court has placed particular emphasis on knowledge of the wrongful acts.  *Polo,* 1999 U.S. Dist. LEXIS 7913 at * 15 (counterfeiters were aware that "what was being produced was unlawful to sell.").

Here, all factors squarely favor an award of maximum statutory damages as the appropriate relief based on Defendants' willful, extensive, repeated and systematic counterfeiting of Louis Vuitton's valuable trademarks.

**B.     All Factors Weigh in Favor of an Award
of the Maximum Statutory Damages**

**1.     Defendants Are Large-Scale Counterfeiters
Who Acted Knowingly and in Bad Faith**

This Court has found that the Defendants are willful and intentional counterfeiters.  *See* August 28, 2008 Order at ¶ 4.   The Court's ruling was supported by a number of undisputed facts, including the following:

> ➢ The Defendants offered for sale and sold multiple Louis Vuitton collections ranging from exact counterfeits, to substantially indistinguishable counterfeits, to multiple infringing collections;

> ➢ The Defendants offered custom made counterfeit Louis Vuitton merchandise through their factory in China in the style, color and even quality grade of the customer's choosing;

> ➢ The Defendants intentionally sought to register nearly identical versions of the LV logo and other famous luxury brand trademarks in an effort to escape costly U.S. Customs' seizures;

> ➢ The continued sale of counterfeit Louis Vuitton merchandise months after this case had been filed; and

➢ Defendants' own admissions – "LV, that's some bag that looks like LV, Louis Vuitton."

In addition, Louis Vuitton has presented significant evidence of the size and scope of Defendants' illegal counterfeiting enterprise. Indeed, the Court found "[i]n all, more than 100,000 counterfeit items belonging to Marco have been seized and Marco has been fined by the United States Customs in the amounts of more than $10 million." *See* Exhibit 1 (Selected portions of August 7, 2008 Tr. ("Tr.")), at 8. It is a well accepted fact that Customs only seizes a fraction of the counterfeited merchandise imported in to the United States. Moreover, U.S. Customs does not levy tens of millions in fines against singular, small-scale offenders. That level of penalty is reserved for massive, repeat offenders. Based thereon, there is little doubt that the Defendants are responsible for importing, selling and introducing into the marketplace tens of millions of counterfeit items.

"The standard for willfulness is whether defendant had knowledge that [his] conduct represented infringement or perhaps recklessly disregarded the possibility." *Philip Morris USA Inc. v. Felizardo*, 2005 WL 2076921, at *6 (E.D.N.Y.) (quoting *Kepner Tregoe, Inc. v. Vroom*, 186 F.3d 283, 299 (2d Cir. 1999)); *Louis Vuitton S.A. v. Lee*, 875 F.2d 584, 590 (7th Cir. 1989) ("Willful blindness is knowledge enough"). As set forth above, there is no question that the Defendants engaged in their global counterfeiting scheme intentionally and with full knowledge that their actions were illegal. Maximum damages on these facts are appropriate.

> **2.    Defendants Have Not Cooperated in Providing Information Relevant to Proof of Profits and Losses**

From the outset of this case, the Defendants have wholly failed to comply with their discovery obligations. With the exception of some documents related to the "M9" collection,

none of the documentary evidence of Defendants' counterfeiting and infringing activities was produced by these Defendants in this litigation.

*No invoices, bills of lading, catalog pages, or financials related to their counterfeit Louis Vuitton merchandise has ever been produced by these Defendants.* The Defendants simply hid from discovery the documents and other information that would reveal the full nature and extent of their counterfeiting enterprise and activities. They had over a year to produce these documents before Ms. Chan and Mr. Lam were arrested, but repeatedly misrepresented to this Court and Louis Vuitton that no such documents existed. Defendants' refusal to produce information regarding their activities and their false representations to the Court regarding discovery is part and parcel of their criminal enterprise. Deception and evasion is their business; it is not limited to their commercial activities, but includes their acts in this litigation and before this Court. Maximum damages are appropriate here.

### 3. A Maximum Statutory Damages Award Would Deter Defendants From Continuing Their Massive Counterfeiting Enterprise

"Statutory damages under the Lanham Act are aimed at deterring future counterfeiting, both by the defendant in question as well as other potential counterfeiters." *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp.2d 448, 458 (S.D.N.Y. 2005) (citing *Philip Morris USA v. Felizardo*, No. 03 Civ. 5891, 2004 U.S. Dist. LEXIS 11154 (S.D.N.Y. June 18, 2004), at *7). "[W]here, as here, a defendant is shown to have acted willfully, a statutory damages award should incorporate not only a compensatory, but also a punitive component to discourage further wrongdoing by the defendant and others." *Rolex Watch U.S.A., Inc. v. Jones*, 99 Civ. 2359, 2002 U.S. Dist. LEXIS 6657 (S.D.N.Y. Apr. 17, 2002). *See also N.A.S. Import Corp. v. Chenson Enter., Inc.*, 968 F.2d 250, 252 (2d Cir. 1992); *Polo Ralph Lauren, L.P. v. 3M Trading Co., Inc.*,

No. 97 Civ. 4824, 1999 U.S. Dist. LEXIS 7913 (S.D.N.Y. Mar. 23, 1999), at *14 (holding that statutory damages are designed to discourage wrongdoing).

*Only the statutory maximum fines will deter the Defendants' counterfeiting acts.* Because of the size, scope and profitability of this counterfeiting enterprise, nothing has deterred these Defendants from ripping off Louis Vuitton and a host of other luxury brand manufacturers. Multiple seizures by U.S. Customs and the imposition of more than $10 million in fines and penalties have had no impact on Defendants' activities. Similarly, trademark enforcement litigation has not stopped Defendants from continuing to counterfeit and infringe. Indeed, Defendants continued to sell counterfeit Louis Vuitton merchandise *after* this case was filed.

A maximum statutory damage award would also benefit public policy by deterring other counterfeiters from following the Defendants' lead. Counterfeiting is a major concern for not only luxury brand firms like Louis Vuitton, but also companies in the aerospace, pharmaceutical, and automobile industries, to name a few, placing not only goodwill at risk, but also consumer safety. A maximum damage award here would send a signal to other infringers that intentional and willful counterfeiting on the scale of these defendants will not be tolerated and will carry stiff penalties.

### 4. Louis Vuitton's Trademarks are Valuable and Have Been Harmed By Defendants' Large-Scale Counterfeiting Enterprise

"The trademark is a valuable asset, part of the 'goodwill' of a business. If the seller provides an inconsistent level of quality, or reduces quality below what consumers expect from earlier experience, that reduces the value of the trademark." *Scandia Down Corp. v. Euroquilt, Inc.* 772 F.2d 1423, 1429-30 (7th Cir. 1985). This Court has recognized and the Defendants have not disputed the value of the Louis Vuitton trademarks. *See* Exhibit 1 (Tr. at 2). Indeed, Louis Vuitton is one of the most famous producers and distributors of haute couture apparel,

luggage, handbags and accessories in the world. Louis Vuitton has spent considerable sums of money advertising and promoting handbags and related items that display the Louis Vuitton Marks. Lichtmess Decl. ¶ 8 (Doc. No. 62). As a result, the company has enjoyed significant sales and widespread notoriety. Lawson Decl. ¶ 6 (Doc. No. 63); *see also* Exhibit 1 (Tr. at 3). The significant value of these famous trademarks is no doubt why the Defendants acted in bad faith to counterfeit and infringe Louis Vuitton on a large-scale.

By placing exact counterfeits of Louis Vuitton's trademarks on handbags, wallets and leather boxes that are of an inferior quality to authentic Louis Vuitton products, the Defendants have damaged and diluted the value of these important symbols of goodwill. Consumers are likely to encounter Defendants' inferior counterfeit products in the market and associate any dissatisfaction or lack of quality with Louis Vuitton – to Louis Vuitton's detriment. Moreover, the fact that these Defendants have counterfeited Louis Vuitton on a large-scale is certain to cause consumer confusion and harm to Louis Vuitton's goodwill for years to come.

### 5. The Defendants Have Enjoyed Significant Commercial Gain at Louis Vuitton's Expense

Although the Defendants have refused to produce financial data concerning their counterfeiting operation, it is clear based on the size and sophistication of the enterprise that the Defendants have imported and sold millions of counterfeit Louis Vuitton items over the last several years, profiting handsomely from their extensive and illegal activity.

The scope of Defendants' operation is supported by the testimony of Mr. Woo. As the Court found, "in 2002, Mr. Woo sold more than $2 million in merchandise, much of which was supplied by Mr. Lam, Ms. Chan and Marco." *Id*. at 6. Indeed, in April 2002, Ms. Chan and Marco sold Mr. Woo several thousand counterfeit Louis Vuitton items in one transaction alone. Given that the Defendants had several other customers nationwide, it can be inferred that the

Defendants sold millions of counterfeit Louis Vuitton items over the course of the last several years.

The extent and scope of this enterprise is further supported by the amount of counterfeit merchandise (over 100,000 items) seized in 2004 alone. To be sure, Customs seized only a fraction of the Defendants' counterfeit merchandise these defendants sought to import. There is little doubt that millions of Defendants' counterfeit units escaped Customs and entered the marketplace. These facts, coupled with the Defendants' efforts to register copies of so many famous luxury brand trademarks with the PTO, signals the massive size, scope and extent of this global counterfeiting scheme. To be sure, the Defendants have enjoyed tremendous commercial success at Louis Vuitton's expense.

### 6. Defendants Have Taken Extensive Measures to Conceal the Scope and Extent of This Counterfeiting Scheme

The Defendants have gone to great lengths to conceal their counterfeiting activities by, for example, refusing to produce any documents related to their counterfeiting activities, refusing to appear for deposition and devising an elaborate corporate shell scheme to block discovery of their counterfeiting operation.[1] Apart from these obstructionist discovery tactics, the Defendants have literally "concealed" their counterfeiting activities by hiding counterfeit Louis Vuitton merchandise inside innocuous bags to escape seizure by U.S. Customs. Conte Decl. at ¶ 11 (Doc. No. 101). Defendants' elaborate efforts to conceal discovery of their intentional and systematic manufacturing and trafficking in counterfeit goods favors a maximum statutory damages award.

---

[1] Though all interrelated, the Defendants have had *eight* different lawyers from *five* different law firms represent their interests at deposition and in Court in this case. This is indicative of the money spent and the resources employed by Defendants' efforts to conceal their enterprise.

## C.    This Court Has Awarded Maximum Statutory
        Damages Before and Should Do So Here

Courts, including this Court, frequently award the maximum statutory amount against counterfeiters for willful infringement and willful counterfeiting.  *See, e.g., Duty Free Apparel, Ltd.,* 315 F. Supp. 2d at 520-21 ($2 million in statutory damages); *Phillip Morris USA Inc. v. Marlboro Express***,** 2005 WL 2076921, at *6 (E.D.N.Y 2005) (maximum statutory damage award of $4 million); *Nike, Inc. v. Top Brand Co.*, No. 00 CV 8179, 2006 U.S. DIST. LEXIS 76540, at *9 (S.D.N.Y. Oct. 6, 2006) (ordering one set of defendants to pay $12 million in statutory damages to Nike and $5 million to Adidas, and ordering another set of defendants to pay $17 million in statutory damages to Adidas and $4 million to Nike); *Playboy Enters, Inc. v. Asiafocus Int'l, Inc.,* 1998 WL 724000, at *9 (E.D. Va. Apr. 10, 1998) ($3 million in statutory damages).

Based on the above precedent and Defendants' deliberate scheme of importing, advertising and selling multiple different counterfeit and infringing Louis Vuitton products. Louis Vuitton respectfully requests the maximum statutory damages of $1 million per mark on two separate types of goods.  First, the Defendants intentionally counterfeited all five Louis Vuitton Marks on several lines of handbags and wallets for a statutory damages total of $5 million.  Defendants also intentionally counterfeited the three Flower Design Marks on leather boxes – a different type of product – for an additional statutory damages award of $3 million.  In total, Louis Vuitton requests $8 million in statutory damages.[2]

---

[2] Louis Vuitton reserves its right to seek an accounting of the profits earned by Defendants based on the sale of their infringing collections including the "M9" collection and the infringing Cherry Blossom Collection.

## IV.  LOUIS VUITTON IS ENTITLED TO RECOVER ITS ATTORNEYS' FEES, INVESTIGATIVE COSTS AND EXPENSES

The Court's finding that Defendants willfully counterfeited Louis Vuitton's trademarks establishes Louis Vuitton's right to reasonable attorneys' fees and costs.  *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F. 3d 849, 854 (2d Cir. 1995) ("'Exceptional' circumstances include willful infringement.").  Indeed, the Court has already ordered that Defendants are jointly and severally liable for Louis Vuitton's fees and costs.  *See* August 28, 2008 Order at ¶ 8 (Doc. No. 110).  The $556,034.22 in fees and costs incurred by Louis Vuitton in this case are reasonable and should be recovered in full.

### A.  Louis Vuitton is Entitled to Reasonable Lodestar Fees.

Courts have historically calculated attorneys' fees based on the "lodestar" method:  the reasonable number of hours expended multiplied by a reasonable hourly rate.  *Hensley,* 461 U.S. at 433.  The reasonableness of fees is assessed by the standards articulated by the Supreme Court in *Hensley v. Eckerhart,* 461 U.S. 424 (1983).  *See Crescent Publishing Group, Inc.  v. Playboy Enterprises, Inc.*, 246 F.3d 142 (2d Cir. 2001).  Moreover, *Hensley* held that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee."  *Hensley*, 461 U.S. at 435.  Louis Vuitton seeks compensation in the amount of $556,034.22, including legal fees and expenses charged by Steptoe & Johnson, LLP and Arnold & Porter, LLP (lead counsel's prior firm) as well as the investigative services provided by Allegiance Protective Group ("Allegiance").

### 1.  Plaintiffs' Records Demonstrate the Reasonableness of the Fees Sought

The "party who seeks payment must keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the

reasonable fees to be allowed." *Hensley,* 461 U.S. at 441 (Burger, J., concurring); *see also New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148 (2d Cir. 1983). The billing and expense records attached to the Allan Declaration meet the Second Circuit's articulated standard for detailed, contemporaneous records. These records specify the date, hours expended, and nature of the work, as required by this Court. *Supreme Oil Co., Inc. v. Abondolo,* 2008 WL 2925300 (S.D.N.Y. 2008); *Rozell v. Ross-Holst,* 2008 WL 2229842 (S.D.N.Y. 2008).

## 2.    Plaintiffs' Total Hours Are Reasonable.

Louis Vuitton's attorneys have exercised billing judgment to present only time and expenses reasonably necessary to successfully prosecute this case. Allan Decl. ¶¶ 39 and 47. Additionally, in the interest of limiting further litigation over the amount of its fees, Louis Vuitton is waiving its right to recover fees for additional work, which would otherwise be recoverable. Allan Decl. ¶¶ 39 and 47. Thus, timekeepers who contributed value to the representation, but were involved in a limited capacity are being eliminated from the fee petition entirely. These reductions are in addition to the exercise of billing judgment made by each firm before submitting its bills to the client. Combined, these reductions show "a good-faith effort to exclude from a fee request hours that are excessive, redundant or otherwise unnecessary." *Hensley,* 461 U.S. at 434.

This case was litigated by a lean team that labored to keep their hours down. Allan Decl. ¶ 27. Furthermore, as set forth above, a large percentage of the hours expended were made necessary by Defendants' obstructionist litigation strategy. *Id*. at ¶ 13. The hours expended and costs incurred were necessary to achieve success for Louis Vuitton.

14

### 3.    Plaintiffs Are Seeking Reasonable Market Rates

Congress intended that counsel representing plaintiffs in fee-shifting cases be compensated consistent with market rates.  *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Albany,* 522 F.3d 182 (2d Cir. 2008).   The rates used in this case were more than reasonable and consistent with market rates.  Allan Decl. ¶¶ 40 and 44.  Moreover, the rates for Michael Allan, lead counsel, were discounted $60 per hour.  *Id.*  The Court typically determines the reasonable rate for counsel within the forum market.  Importantly, the majority of timekeepers in this case practice in Washington, D.C. which has lower rates than similarly situated firms within the Southern District of New York.  Louis Vuitton has provided the Court with evidence of the reasonable market rates for the attorneys from Washington, D.C. and New York who represented plaintiff in this matter.  Allan Decl. at ¶¶ 40-44.

Independent surveys confirm that the rates sought by Louis Vuitton for its D.C. and New York counsel are reasonable market rates for their home jurisdictions.  Each year the National Law Journal surveys firms nationwide and publishes a survey of billing rates.  The most recent survey, released in December 2007, captures billing rates from various firms across the country who responded to the questionnaire.[3]

Louis Vuitton is seeking rates for attorneys from Washington, D.C. that range from $240 for a junior associate to $685 for William Pecau, a senior Intellectual Property partner.  According to the NLJ, these rates are well within the range of the local D.C. market.  Louis Vuitton is seeking compensation for only two attorneys in New York – Lenor Marquis Segal

---

[3] A copy of the survey is attached as Exhibit 2.

from Steptoe and Anthony Boccanfuso from Arnold & Porter – both of whom have rates consistent with the New York market.[4]

### B.     Plaintiffs Expenses are Compensable

Louis Vuitton incurred $58,887.73 in reasonable litigation expenses for which it seeks recovery.  Allan Decl. at ¶ 48.  Each expense was necessarily and reasonable.  *Id.*  Federal fee-shifting precedent mandates that "expenses incurred in the creation of attorney work product and traditionally billed as part of a fee charged to the client are recoverable" as part of congressionally-mandated fee-shifting.  *Northcross v. Board of Ed. Of Memphis City Schools,* 611 F.2d 624, 639 (6th Cir. 1979) (incidental and necessary out-of-pocket expenses such as photocopying, travel and telephone costs incurred in furnishing effective and competent representation," authorized by statutory fee-shifting); *see also West Virginia University Hospitals, Inc. v. Casey,* 499 U.S. 83 (1991) (reasonable litigation expenses normally billed to client as part of attorney bill are recoverable).  The expense figure also includes the investigator fees of Allegiance, which have been allowed as recoverable in trademark cases.  *Silhouette,* 2004 WL 2211660 *4.  Louis Vuitton's expenses fall within the categories previously found by this Court to be reasonable, and are of the type traditionally made part of the fee charged to the client. They should be reimbursed here.

---

[4] Louis Vuitton is entitled to recover its fees at current market rates to compensate for the delay in payment caused by the protracted course of the litigation.  *Missouri v. Jenkins*, 491 U.S. 274 (1989); *Rozell,* 2008 WL 2229842 *12.  The lodestar fees sought in this petition have been computed using current rates for all work.

## V.    CONCLUSION

For all the reasons set forth above, Louis Vuitton respectfully requests the maximum amount of statutory damages of $1,000,000 per violation for each of the five Louis Vuitton trademarks counterfeited on handbags and wallets, and $1,000,000 per violation for the three Flower Design trademarks counterfeited on leather boxes for a total award of $8,000,000 as well as an award of reasonable attorneys' fees and expenses in the amount of $556,034.22, together with such other relief as this Court deems just and proper.


Dated: Washington, D.C.            STEPTOE & JOHNSON LLP
September 8, 2008

                                   By: /s/ Michael J. Allan
                                       1330 Connecticut Avenue, N.W.
                                       Washington, DC 20036
                                       Telephone:   (202) 429-3000
                                       Facsimile:   (202) 429-3902

                                       Lenor Marquis Segal
                                       750 Seventh Avenue, Suite 1700
                                       New York, New York 10019
                                       Telephone:  (212) 506-3900
                                       Facsimile:  (212) 506-3950


                                       *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

     I hereby certify that I caused to be served upon the parties listed below by ECF and Federal Express on September 8, 2008, a true and correct copy of the annexed LOUIS VUITTON'S MEMORANDUM OF LAW IN SUPPORT OF ITS APPLICATION FOR STATUTORY DAMAGES ATTORNEYS' FEES, INVESTIGATIVE FEES AND COSTS.

/s Kimberlyn Brzozowski

     Kathleen C. Waterman, Esq.
Law Office of Kathleen C. Waterman
419 Park Avenue South, Suite 407
New York, NY 10016
  *Attorney for LY USA, Inc.*

     Angelo Rios, Esq.
Cheven, Keely & Hatzis
40 Wall Street
New York, NY 10005
  *Attorney for Coco and Chan*

     Thomas Torto, Esq.
419 Park Avenue South
New York, NY  10016

     Michael G. Dowd, Esq.
112 Madison Avenue, 3rd Avenue
New York, New York 10016
  *Attorney for Marco Leather Goods, Ltd.*
  *and Chong Lam*