Exhibit 1

```
                  887zvuim              Motion
     1     UNITED STATES DISTRICT COURT
     1     SOUTHERN DISTRICT OF NEW YORK
     2     ------------------------------x
     2
     3     LOUIS VUITTON,
     3
     4                Plaintiff,
     4
     5           v.                              06 CV 13463 (AKH)
     5
     6     LY, USA, et al.,
     6
     7                Defendants.
     7
     8     ------------------------------x
     8
     9                                           August 7, 2008
     9                                           3:30 p.m.
    10
    10     Before:
    11
    11                   HON. ALVIN K. HELLERSTEIN,
    12
    12                                           District Judge
    13
    13                          APPEARANCES
    14
    14     STEPTOE & JOHNSON LLP
    15           Attorneys for Plaintiff
    15     BY:  MICHAEL ALLAN
    16          RACHEL HOFSTATTER
    17     CHEVEN KEELY & HATZIS
    17           Attorneys for Defendants CoCo USA, Inc. and Joyce Chan
    18     BY:  ANGELO RIOS
    18
    19     LAW OFFICE OF MICHAEL DOWD
    19           Attorneys for Defendant Chong Lam
    20     BY:  TERRENCE RANDELL
    20
    21     THOMAS TORTO
    21          Attorney for Defendants Marco and Lam
    22
    22     KATHLEEN C. WATERMAN
    23          Attorney for Defendant LY USA
    23
    24
    25
                     SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300
```

1

2

```
                  887zvuim              Motion
     1          THE COURT: All right, are you ready?
     2          MR. ALLAN: Yes, your Honor.
     3          THE COURT: All right. I thought we should start with
     4     my making some preliminary findings on facts that do not seem
     5     to be disputed, and then we'll move into the disputed issues.
     6          First I'll identify the parties. The plaintiff is
     7     Louie Vuitton Malletier. You'll pardon the mispronunciations.
     8     The defendants are LY USA, Inc., Marco Leathergoods, Limited,
     9     CoCo USA, Inc., Chong Lam, who is the president of LY USA, and
    10     of Marco, and Joyce Chan, who is the manager of LY USA Marco
```

```
                            887ZVUIM.txt
11      and CoCo USA.
12                  The basis of jurisdiction is the Lanham Act, and with
13      respect to various aspects of the New York Business Law,
14      supplemental jurisdiction under 28 U.S.C. Section 1367.
15                  There are ten counts to the complaint.  Basically,
16      they allege trademark infringement, and trademark dilution and
17      accompanying issues of unfair competition.
18                  We're dealing with a famous trademark.  The plaintiff,
19      Louis Vuitton, is a high-end luxury brand founded in Paris in
20      1854.  Its trade name, LV, has been associated with the brand
21      since it was founded.  The company has obtained federal
22      registration for its trademarks, including the LV logo, and the
23      Louis Vuitton Toile Monogram designs.  Toile Monogram features
24      the entwined LV initials with three accompanying motifs, a
25      diamond with an inset four-point star, its negative, and a
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                  (212) 805-0300
```

```
        887zvuim                      Motion
 1      circle with a four-leafed flower inset.
 2                  The trademarks have been in use exclusively and
 3      continuously.  And pursuant to 15 U.S.C. Section 1065, they
 4      have become incontestable.  They certainly have been in
 5      continuous use for more than the five consecutive years
 6      following registration.
 7                  The defendants are all related in one sense or
 8      another.  Their business is producing hand bags and travel
 9      accessories.  They do business in New York, and have offices at
10      135 West 30th Street in New York City.
11                  In 2003, Louis Vuitton collaborated with a Japanese
12      artist Takashi Murakami, to develop a limited edition line of
13      Louis Vuitton bags, referred to as the LV Cherry Blossom
14      collection.  These items contained pink and yellow cherry
15      blossom flowers superimposed over Vuitton's Toile Monogram
16      Mark.
17                  Between 2005 and 2007, Louis Vuitton spent
18      considerable money -- the precise amount is regarded as
19      confidential by Vuitton -- in advertising, and it's substantial
20      revenues in the United States alone with respect to these
21      famous marks.  Vuitton markets its brands in magazines,
22      newspapers, catalogs, various mailings and on the internet.
23                  It uses a term M9 to identify certain bags that
24      contain the Louis Vuitton logo, the three flower designs and
25      the Toile Monogram mark.
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                  (212) 805-0300
```

```
        887zvuim                      Motion
 1                  The individual defendants Chan and Lam live together
 2      in Douglaston, New York.  I don't know if they're married or
 3      not, but, in any way it's not relevant.  And they have
 4      children.  Their companies, Marco Leathergoods, CoCo USA and LY
 5      USA, conduct business at the address I mentioned, 135 West 30th
 6      Street in Manhattan.
 7                  Mr. Lam appears to be the owner and director of LY
 8      USA.  His cousin appears to be the owner of CoCo.
 9                  I should add, by way of digression, that these facts
10      and those that follow were illicited in a different lawsuit in
11      which the defendants were parties, brought by an important
12      witness in this case, a lawsuit for monies owed with regard to
13      merchandise purchased.  These depositions were taken last year
14      in April 2006.
15                  The defendants in this case, the individuals, did not
                                     Page 2
```

887ZVUIM.txt
16  testify, although they were called at depositions, claiming
17  their privilege under the Fifth Amendment.
18              As I'm sure you all know, under LiButti versus United
19  States, 178 F.3d, 114 at page 120, Second Circuit 1999, the
20  Court may take adverse inferences against litigants who assert
21  their Fifth Amendment rights against self-incrimination during
22  a civil proceeding. Such an inference, the Court held, may be
23  given significant weight because silence when one would be
24  expected to speak, is a powerful persuader. The inference may
25  be taken not only against the individual, but in appropriate
            SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

5

887zvuim                    Motion
1   circumstances against the corporation whose principal is that
2   individual.
3              Continuing with facts that are largely undisputed.
4   Defendant Chan worked as the secretary for Marco, a manager,
5   salesperson. She was acting secretary and bookkeeper for CoCo.
6   She has done various work for LY USA, and she's been thoroughly
7   involved with the corporate defendants.
8              Marco has filed several applications with the patent
9   and trademark office to register certain marks close to various
10  famous names like Coach, Givenchy, Burberry and others. In
11  most situations, those applications for trademark registration
12  were withdrawn, were adversely decided by the Trademark Trial
13  and Appeal Board.
14             However, LY USA was successful in obtaining a
15  registration for an entwined LY logo that it uses, and is one
16  of the issues in this case.
17             The principal witness in this case is a gentleman
18  named Joung Y. Woo. He is the president of a company known as
19  Primero, Inc. He was president also of a company known as
20  Xelina. And in April 2002, Chan provided Woo with catalogs
21  from Marco featuring what was believed to be counterfeit
22  merchandise, with the LV logo and motifs. The bags pictured in
23  the catalog are in styles very close to much of the
24  leathergoods that are produced by Vuitton. They feature a base
25  color with a logo and design and printed in a contrasting color
            SOUTHERN DISTRICT REPORTERS, P.C.
                    (212) 805-0300

6

887zvuim                    Motion
1   using contrasting leather or fake leather trim. The shape of
2   the bags also resemble bags identified with Louis Vuitton.
3              Woo testified that he signed the sales confirmations
4   for the goods from Marco and paid for and received the
5   merchandise. Many of these items bore a prefix in the catalog
6   LX. Woo testified that defendant Chan provided him with color
7   swatches and material displaying counterfeit versions of all
8   five LV marks in various color schemes. He testified also that
9   customers such as himself could custom order counterfeit LV
10  merchandise by pairing a particular style bag from the catalog
11  with one of the different colored counterfeit LV fabric
12  swatches that Chan provided. Defendants also offered another
13  collection of merchandise that was very similar to the
14  counterfeit merchandise, except that it had a LY logo, rather
15  than an LV mark on the items.
16             Four of these LY items were purchased by an
17  investigator engaged by Vuitton. They were purchased at a
18  retail shop in Texas in August 2005. The shop's name was
19  BJAXX.
20             Woo testified to admission by Chan that the items in
                        Page 3

```
21    the Marco catalog were not illegal.  In 2002, Woo sold more
22    than $2 million in merchandise, much of which he states, he
23    testified was supplied to him by Chan, by Lam and by Marco
24    Leathergoods.
25              Woo testified that the counterfeit merchandise was
```

7

887zvuim                Motion
```
 1    available in three grades, according to quality.  Type A was
 2    the most expensive and of highest quality, it was packaged in a
 3    box labeled Louis Vuitton.  Type B was the middle end grade
 4    merchandise, Type C the lowest quality and lowest grade.  Woo
 5    testified that these goods were shipped mixed with
 6    non-counterfeit merchandise and that the counterfeit
 7    merchandise was in the middle in the back of containers so that
 8    on opening the containers, an inspector would see what was not
 9    counterfeit.
10              Woo testified that the merchandise offered for sale by
11    the defendants included an M9 collection which bears
12    substantial similarity to the Vuitton marks, except that a
13    cursive M replaces the LV logo, and that the flower design is
14    somewhat modified.  Exhibits appear in the materials submitted
15    to the Court.  The background appears to be a brown canvas, and
16    the placement and layout of the logo and flower designs bears a
17    very close similarity to the Louis Vuitton marks.  The styles
18    of the bags are similar.  Investigators engaged by Vuitton
19    purchased several styles of these bags from CoCo at the
20    business location in Manhattan 135 West 30th Street in March of
21    2007.
22              The Cherry Blossom collection features bags with a
23    brown canvas base similar in color to the canvas of the Louis
24    Vuitton bags, and the LY logo is in contrasting colors in pink
25    and red cherry blossom flowers superimposed with pink and red
```

8

887zvuim                Motion
```
 1    cherry blossoms and flowers superimposed over the logos.  These
 2    items were seized by Customs, United States Customs in Long
 3    Beach, California.
 4              The goods were also seized in Newark, New Jersey and
 5    both these seizures occurred between July and November 2004.
 6    In all, more than 100,000 counterfeit items belonging to Marco
 7    have been seized and Marco has been fined by the United States
 8    Customs in the amounts of more than $10 million.
 9              I think that completes my recitation of the facts that
10    I think have not been contested.  Perhaps they've not been
11    contested because of the Fifth Amendment that was claimed by
12    the individual defendants, but notwithstanding, there is no
13    proper opposition to these facts and I accept them as having
14    been proved.
15              Now I'll hear plaintiffs to show the similarity of
16    bags, whether or not there has been independent access to
17    independent designs by defendant, and other relevant facts in
18    the trademark infringement lawsuit.
19              MR. ALLAN:  Yes, your Honor.  Thank you.  May it
20    please the Court, my name is Michael Allan and I'm here on
21    behalf of Louis Vuitton.  I'd like to briefly introduce Rachel
22    Hofstatter with my firm, and this is Nathalie Chasques, senior
23    and counterfeiting director for Louis Vuitton.
24              We have to show your Honor the M9 bags that are the
25    infringing iteration of defendant's operation.  This is an
```

```
887zvuim                Motion
 1    authentic Louis Vuitton Bucket Bag, your Honor.
 2              THE COURT:  Has Mr. Rios seen these?
 3              MR. ALLAN:  Yes.  These were shown at the mediation in
 4    this case and they had the opportunity to examine --
 5              THE COURT:  I want to make sure Mr. Rios sees what
 6    you're exhibiting to him.
 7              MR. RIOS:  Oh, I accept that that is a bag.
 8              MR. ALLAN:  So this is a, what's referred to as a
 9    Bucket Bag, your Honor.  This is an authentic Louis Vuitton bag
10    that has the five Federally registered trademarks at issue; the
11    overlapping LV mark --
12              THE COURT:  Is there an exhibit I could refer to while
13    you're showing this so I --
14              MR. ALLAN:  We do have exhibits, your Honor, of
15    authentic bags, certainly.  Let me identify that for you
16    quickly.
17              THE COURT:  I'm not able to see clearly what you're
18    exhibiting.
19              MR. ALLAN:  Sure.  And I'd be happy to show this to --
20    hand it up to you as well, your Honor.  If you look at Exhibit
21    2, there are several authentic bags attached, and I can hand
22    this to you right now if you like, your Honor.
23              THE COURT:  Well, aren't you going to need it?
24              MR. ALLAN:  I mean, I know the marks so I'm happy to
25    show it to you and describe what's in your hand if you like.
```

```
887zvuim                Motion
 1              THE COURT:  Fine.
 2              MR. ALLAN:  May I approach?
 3              THE COURT:  Sure.  All right, now I have the bag.
 4              MR. ALLAN:  As I said, your Honor, this is an
 5    authentic Bucket Bag.
 6              THE COURT:  What are we going to do about providing a
 7    record of this; you want to mark this as an exhibit?
 8              MR. ALLAN:  That's a very good question.  I think we
 9    could mark it as an exhibit.
10              THE COURT:  I think what you would be better off doing
11    is using the exhibits that are already in the material, and I
12    would have this for similarity.  You should set it aside and
13    bring it with you at any appellate argument.
14              MR. ALLAN:  I'd be happy to do that, your Honor.  I
15    think we can refer to exhibit -- I think it was Exhibit 2 that
16    I referred you to.
17              THE COURT:  Tell me on this exhibit, this -- is
18    Exhibit 2 a Bucket Bag?
19              MR. ALLAN:  Not a Bucket Bag.  Just different pictures
20    of authentic bags that display the marks that are at issue.
21              THE COURT:  Why don't you call the real thing exhibit
22    2A.  You'll retain the exhibit.
23              MR. ALLAN:  Very good.  Exhibit 2A.
24              THE COURT:  Yes.
25              MR. ALLAN:  So as I said, your Honor --
```

```
887zvuim                Motion
 1              THE COURT:  Is the model a trademark?
```

```
 2              MR. ALLAN: Pardon me?
 3              THE COURT: Is the model a trademark?
 4              MR. ALLAN: No, no. She's not trademark. I don't
 5    think -- your Honor, I don't think she does any source or
 6    origin.
 7              The overlapping LV logo, as your Honor has found
 8    Federally registered, each of the three flower motifs also is a
 9    Federally registered and protected trademark.
10              THE COURT: All right, describe these flowers.
11              MR. ALLAN: Well that let me look at real quick, your
12    Honor. There is a star with its reverse inset and then a
13    circular motif with four petals, if you will. And each of
14    those flower designs is Federally registered. And then of
15    course, as your Honor's noted, the overall trademark, which is
16    the Toile Monogram mark often referred to as the monogram
17    canvas mark, is also registered trademark.
18              THE COURT: Which is the monogram?
19              MR. ALLAN: The overall appearance, the repeating
20    pattern of the three flower marks and the LV mark itself is the
21    toile monogram.
22              THE COURT: Composite of all these marks.
23              MR. ALLAN: Yes, your Honor.
24              THE COURT: The individual mark entwined LV is a
25    trademark?
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

```
 1              MR. ALLAN: Yes, your Honor.
 2              THE COURT: The four-leafed flower is a trademark.
 3              MR. ALLAN: Yes, your Honor.
 4              THE COURT: The four-leafed flower in negative within
 5    a square sitting on an edge, I would call it?
 6              MR. ALLAN: Yes, it is, your Honor.
 7              THE COURT: Is a trademark? And.
 8              MR. ALLAN: It's inset.
 9              THE COURT: Yeah, and there's one in the circle.
10              MR. ALLAN: That's correct.
11              THE COURT: Trademark.
12              MR. ALLAN: That's also Federally registered. So
13    there are five Federally registered trademarks appearing on
14    that bag.
15              As the Second Circuit's noted, your Honor, when
16    evaluating infringing goods, the analysis is not a side-by-side
17    comparison, but rather the overall commercial impression of the
18    merchandise.
19              THE COURT: Judge Hands said in a case, that probably
20    only I remember, it's the effect on the consumer.
21              MR. ALLAN: That's correct. And if you note --
22              THE COURT: So I when a consumer passes this
23    merchandise in a store or in a stall or on a street, is the
24    consumer likely to be confused as to the marks that are used.
25              MR. ALLAN: Exactly. In a restaurant, in a shopping
                     SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

```
 1    center, anywhere. And if you'll note, your Honor, exhibit 2A,
 2    there's actually a little change purse inside that bag as well.
 3              THE COURT: Also with the same marks.
 4              MR. ALLAN: Yes. That's correct, your Honor. And so
 5    if I might, your Honor, I'd like to show you an exhibit of the
 6    M9, defendant's M9 bag, which we contend is infringing.
```

```
                        887ZVUIM.txt
 7          THE COURT:  I only see four marks, not five.  One --
 8          MR. ALLAN:  There's the overall composite mark is the
 9  toile monogram mark.
10          THE COURT:  All right, that's the fifth, okay.
11          MR. ALLAN:  Right.
12          THE COURT:  I see four individual marks, and the fifth
13  is the composite of the four.
14          MR. ALLAN:  That's right, your Honor.
15          THE COURT:  Okay, go ahead.
16          MR. ALLAN:  So if I might approach, I could show you
17  the infringing M9 bag.
18          THE COURT:  All right, please do.  Is there an
19  exhibit?
20          MR. ALLAN:  We could make this 2B.
21          THE COURT:  What do I see here?
22          MR. ALLAN:  This is a bag that was purchased, as your
23  Honor --
24          THE COURT:  No.  Do you have a picture of the same
25  thing in the materials submitted to me?
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```
```
    887zvuim                      Motion
 1          MR. ALLAN:  There are pictures I believe in our
 2  exhibits, exhibit number 18 and 20, and in defendant's exhibits
 3  as well.
 4          So as you can see, your Honor, looking at the overall
 5  commercial impression of this bag, it clearly evokes thoughts
 6  of Louis Vuitton.  It's got the same overall appearance, it's
 7  got the same color, it's got the same bag style, and it
 8  contains infringements of each of the five registered
 9  trademarks, with the exception of the overlapping LV.
10          THE COURT:  All right, let me describe what's here.
11  Instead of the entwined LV, the accused merchandise has a
12  cursive capital M.  A close inspection would show a difference.
13  But the question, as you put it, is how it would look to
14  someone in a store or in a street or in a stall.
15          MR. ALLAN:  That's right, your Honor.
16          THE COURT:  Instead of the square containing the
17  four-leaved flower, there is a square divided in four.  Instead
18  of a four-leafed flower, it is a five-leafed flower.  Instead
19  of the circle containing the flower with a circular motif for
20  each petal, there are four circles spread into the flower into
21  the circle -- sorry, let me do that again.
22          The circle contains a suggestion of a four-leafed
23  flower, but not integral.  There is a dot in the center, and
24  where the four leaves would be, there are four circles, and
25  similarly.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```
```
    887zvuim                      Motion
 1  What causes the bags to look very much alike is the
 2  background color, which is identical but which is not
 3  protected, the arrangement of the motifs, the scheme of
 4  repetition of the motifs and the contrasting lighter shade of
 5  the motifs.
 6          The overall appearance of the bag also not protected,
 7  is similarly the same.  In my opinion, if a customer were to
 8  study the bags side by side, which is not the test, the
 9  customer would see the differences.  But the customer also
10  would have a question whether the accused merchandise is a
11  variant of the Louis Vuitton merchandise, because the
                                Page 7
```

```
12      repititions of the patterns, the colors, the arrangements, and
13      the overall appearance are much the same.
14              MR. ALLAN:  And, your Honor, we've got several other
15      examples of comparisons between the authentic Louis Vuitton
16      merchandise and the M9 merchandise, if your Honor would like to
17      see that.
18              THE COURT:  Do you think it's necessary?
19              MR. ALLAN:  I don't.  Your Honor also mentioned the
20      what we refer to in our briefing as the second tier counterfeit
21      merchandise prepared by the defendants, which replicates all of
22      the Louis Vuitton marks except they've replaced an overlapping
23      LV with a LY, and there is a catalog page --
24              THE COURT:  I think that would be a good thing to talk
25      about.
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300
```

```
 1              MR. ALLAN:  Very good.  We've got a catalog page, a
 2      catalog page that your Honor mentioned I believe it's attached
 3      as exhibit seven.  I've singled that page out.  If I may
 4      approach your Honor, I've got that page singled out and I've
 5      got copies for counsel as well.
 6              THE COURT:  Okay.
 7              MR. ALLAN:  And I've got copies for counsel as well.
 8              THE COURT:  Okay.
 9              MR. ALLAN:  May I?
10              THE COURT:  Do you have an actual bag?
11              MR. ALLAN:  We do your Honor, yes.  Would you like to
12      see -- may I approach, your Honor?
13              THE COURT:  Yes.
14              MR. ALLAN:  The bag that I'm handing you in the sealed
15      container, your Honor, is the bag of which images were attached
16      to the declaration of Mr. Keith Haney and --
17              THE COURT:  May I break the seal?
18              MR. ALLAN:  I'm sorry?
19              THE COURT:  May I break the seal.
20              MR. ALLAN:  Yes, you may.  This is the bag, your
21      Honor, that was purchased at the BJAXX store in Texarkana,
22      Arkansas.
23              THE COURT:  I don't think I need to see it.
24              MR. ALLAN:  Okay.  If you like to, there is a hang
25      tag, your Honor, on the bag, and it's in the pictures attached
                        SOUTHERN DISTRICT REPORTERS, P.C.
                                 (212) 805-0300
```

```
 1      to Mr. Haney's declaration that says 742Y.
 2              THE COURT:  What does that stand for?
 3              MR. ALLAN:  Well, if you compare it to the document I
 4      just handed you, which is attached as exhibit seven, if you
 5      look at the 742Y style number.
 6              THE COURT:  Yes.
 7              MR. ALLAN:  You'll see that bag, and there are several
 8      bags within that one bag.
 9              THE COURT:  Is there a comparable Louis Vuitton bag
10      that has the same size and look?
11              MR. ALLAN:  Yes, there is, your Honor.  May I
12      approach?
13              THE COURT:  Yes, please.
14              MR. ALLAN:  There is called the Pochette bag.
15              THE COURT:  And I have a picture of the LV 6200.
16      What's that, an exhibit?
```

887ZVUIM.txt
```
17          MR. ALLAN: It's part of exhibit seven, your Honor,
18   which are several documents that were attached to Mr. Woo's
19   declaration -- deposition transcript.
20          THE COURT: I'm referring to this.
21          MR. ALLAN: That's the bag you're looking at. You're
22   looking at --
23          THE COURT: Right.
24          MR. ALLAN: -- the actual bag which that's the picture
25   of.
```

```
887zvuim                Motion
 1          THE COURT: So I have -- okay. And what exhibit is
 2   that?
 3          MR. ALLAN: I believe that is Exhibit 1.
 4          THE COURT: All right.
 5          MR. ALLAN: And as you can see, your Honor, the bag --
 6          THE COURT: Where is the original; where is the
 7   Vuitton bag? Here, I have it, thank you.
 8              All right. So what we have here -- it's a different
 9   color. The Louis Vuitton is typical rich chocolate brown.
10   This is a light brown. It displays the same -- withdrawn. It
11   displays instead of the LV with the L and the V superimposed on
12   each other, an LY superimposed one on the other. The L has the
13   same orientation. The standing leg of the L is what appears to
14   me about a 70-degree angle. The accused merchandise, that
15   upper leg is probably about 60 degrees. The horizontal leg has
16   a foot on both arranged a little differently. The stub where
17   the two angles meet, exists on both, but also a little
18   differently.
19              There are differences -- a co-study would show there
20   are differences, but a passerby could easily confuse the two,
21   and I think would be likely to confuse the two, perhaps noting
22   that there are differences but unsure as to what is what, and
23   that is sufficient for likelihood of confusion.
24          MR. ALLAN: Your Honor -- I'm sorry.
25          THE COURT: Yes.
```

```
887zvuim                Motion
 1          MR. ALLAN: If I may. Our position, your Honor, is
 2   that this bag is a counterfeit bag. There are counterfeit
 3   exact copies of the marks that are at issue in this case.
 4          THE COURT: Well, what is a counterfeit; is it the
 5   exactly the same?
 6          MR. ALLAN: Well, counterfeit is defined in the Lanham
 7   Act as a spurious mark that is substantially indistinguishable
 8   from the original mark, okay. A counterfeit can only be of a
 9   registered trademark. There are five registered trademarks at
10   issue in this case.
11          THE COURT: There are possibilities of infringement
12   without being counterfeit.
13          MR. ALLAN: Yes, certainly there are. And we've, in
14   this case --
15          THE COURT: Infringement is a larger concept than
16   counterfeiting.
17          MR. ALLAN: Yes. Counterfeits are infringements.
18          THE COURT: But not all infringements are
19   counterfeits.
20          MR. ALLAN: That's correct, that's correct.
21          THE COURT: And what difference does it make to you if
```